**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>Debtors. | **FOR PUBLICATION**<br><br>Case No. 12-12020 (MG)<br><br>Jointly Administered |
| RESIDENTIAL FUNDING COMPANY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBS REAL ESTATE SECURITIES, INC.,<br><br>Defendant. | Adv. Pro. Case No. 14-01926 (MG) |

<u>**MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND**</u>

*A P P E A R A N C E S :*

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
*Attorneys for Defendant UBS Real Estate Securities, Inc.*
Four Times Square
New York, New York 10036
By:     Alexander C. Drylewski, Esq.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
*Attorneys for Plaintiff Residential Funding Company, LLC*
51 Madison Avenue, 22nd Floor
New York, New York 10010
By:     Isaac Nesser, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Debtor Residential Funding Company, LLC ("RFC") filed this lawsuit against UBS Real

Estate Securities, Inc. ("UBS") in the New York State Supreme Court, seeking breach of contract

damages and indemnification related to loans UBS sold to RFC.  RFC then removed the action to

this Court, and UBS now seeks to remand the case to state court.[1]  UBS also filed a motion to

withdraw the reference of the action to this Court.  Judge Daniels of the District Court denied

that motion without prejudice, in part to await this Court's decision on this Remand Motion.[2]

The complaint filed in this action is substantially similar to complaints in 83 other

lawsuits (the "RMBS Actions") initiated by RFC or its successor in interest, the ResCap

Liquidating Trust (the "Trust").  The majority of the RMBS Actions are currently pending in the

U.S. District Court for the District of Minnesota.  Thirteen adversary proceedings substantially

similar to this action are currently pending before this Court, under the central docket *In re*

*ResCap Liquidating Trust Mortgage Purchase Litigation*, Adv. No. 14-07900 (Bankr. S.D.N.Y.).

At least ten defendants in those adversary proceedings have pending motions to withdraw the

bankruptcy reference and/or transfer venue, each in front of a different district judge.[3]

---

[1]       The motion pending before the Court is the *Motion of Defendant UBS Real Estate Securities Inc. to Remand This Action to New York State Supreme Court* (the "Remand Motion," ECF Doc. # 5).  The Remand Motion is supported by a Memorandum of Law (the "Mem.," ECF Doc. # 6) and the Declaration of Robert A. Fumerton (the "Fumerton Decl.," ECF Doc. # 7).  RFC filed an opposition (the "Opp.," ECF Doc. # 18), and UBS filed a reply (the "Reply," ECF Doc. # 22).  The Court heard oral argument on the Remand Motion on June 26, 2014.  At the hearing, the Court requested supplemental briefing from the parties.  On July 25, 2014, UBS filed a *Supplemental Memorandum of Law in Support of its Motion to Remand* (the "UBS Supp.," ECF Doc. # 34) and the Supplemental Declaration of Robert A. Fumerton (the "Fummerton Supp.," ECF Doc. # 35).  RFC filed a *Supplemental Memorandum of Law in Opposition to Defendant's Motion to Remand* (the "RFC Supp.," ECF Doc. # 36) and the Declaration of Isaac Nesser (ECF Doc. # 37).

[2]       *See* Case No. 14-cv-03039 (GBD), ECF Doc. # 12 (July 14, 2014) (Order Denying Motion to Withdraw Bankruptcy Reference); July 10, 2014 Hr'g Tr. 5:18–6:16.

[3]       After Judge Daniels' decision to await this Court's decision on the instant Remand Motion, several other district judges with pending motions to withdraw the reference in RMBS Actions followed suit.  *See ResCap Liquidating Trust v. CMG Mortg., Inc.*, No. 14-cv-4950 (Pauley, J.); *Rescap Liquidating Trust v. First Mariner Bank*, No. 14-cv-5064 (Crotty, J.); *Rescap Liquidating Trust v. Cadence Bank, N.A.*, No. 14-cv-5250 (Abrams, J.); *Rescap Liquidating Trust v. PHH Mortg. Corp.*, No. 14-cv-5315 (Koetl, J.); *Rescap Liquidating Trust v. Honor Bank*, No. 14-cv-5415 (Schofield, J.); *Residential Funding Co., LLC v. GreenPoint Mortg. Funding, Inc.*, No. 14-5452 (Castel, J.); *Rescap Liquidating Trust v. Summit Fin. Mortg. LLC*, No. 14-5453 (Gardephe, J.).

In one of the RMBS Actions, Judge Hellerstein granted a motion to withdraw the reference and transfer venue to the District of Minnesota, enforcing a contractual forum selection clause.  *See ResCap Liquidating Trust v. RBC Mortg. Co.*, No. 14-cv-04457 (AKH), ECF Doc. # 10 (S.D.N.Y. July 18, 2014).  Judge Hellerstein's decision was based, in part, on his holding that RFC's claims in that action are non-core since a "breach-of-contract action by a debtor against a party to a prepetition contract, who has filed no claim with the bankruptcy court, is non-core."  *Id.* at 3 (quoting *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993)).  Judge Hellerstein later denied RFC's

The RMBS Actions involve similar state law claims for breach of contract and indemnification related to the packaging and sale of residential mortgage backed securities ("RMBS"). What sets the UBS action apart is the fact that UBS filed a proof of claim against RFC in the bankruptcy case. That distinction is determinative of the outcome of this Motion. UBS's proof of claim seeks contract breach damages and indemnification under a separate but similar contract governing the sale of loans from RFC to UBS. As explained below, RFC's claims against UBS are counterclaims to UBS's proof of claim. As such, the counterclaims are statutorily "core" under 28 U.S.C. § 157(b)(2)(C) as "counterclaims by the estate against persons filing claims against the estate." It follows that the counterclaims fall within Congress' grant of federal subject matter jurisdiction under 28 U.S.C. § 1334(b) over "civil proceedings arising under title 11, or arising in or related to cases under title 11." Whether this Court has the constitutional authority (absent consent) to enter final judgment on the counterclaims is a separate issue, not necessary for a ruling on the Remand Motion.[4] Further, because RFC's claims are "core," they are not subject to mandatory abstention under 28 U.S.C. § 1334(c)(2), and the Court will not abstain from hearing this action under the permissive abstention principles

---

request to stay his decision to withdraw the reference and transfer venue pending this Court's disposition of this Remand Motion. *See* Case No. 14-cv-04457, ECF Doc. # 14 (S.D.N.Y. July 29, 2014).

[4]       The Court will assume for purposes of this decision that it would not have authority to enter final orders or judgment on RFC's counterclaims against UBS without the consent of the parties. The Court would still have authority to enter proposed findings of fact and conclusions of law whether the claims are core or non-core. *See Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2168 (2014) ("We hold today that when, under *Stern*'s reasoning, the Constitution does not permit a bankruptcy court to enter final judgment on a bankruptcy-related claim, the relevant statute nevertheless permits a bankruptcy court to issue proposed findings of fact and conclusions of law to be reviewed *de novo* by the district court."). Since RFC and UBS sold loans to each other under substantially similar contracts, there may be issues of fact and law common to the claims and counterclaims. To the extent that the bankruptcy court finally determines issues of fact and law in the claims allowance process, preclusion principles may apply in adjudicating the counterclaims even if the Court cannot enter final orders or judgment. *See Frazin v. Haynes & Boon, L.L.P. (In re Frazin)*, 723 F.3d 313, 324 (5th Cir. 2013) (applying preclusion to facts determined in claims allowance process to counterclaim on which bankruptcy court could not enter final judgment). This is another reason the claims and counterclaims should be heard together.

of 28 U.S.C. § 1334(c)(1).  Accordingly, the Remand Motion is **DENIED** for the reasons set forth below.

## I.      BACKGROUND

### A.      The Complaint

RFC asserts common law causes of action for breach of contract and contractual indemnification arising out of RFC's purchase of loans from UBS (the "Loans").  (*See* Second Amended Complaint ("SAC"), ECF Doc. # 33 ¶¶ 81–91).  According to RFC, it purchased over 2,200 mortgage loans from UBS, with an original principal balance in excess of half a billion dollars.  (*Id.* ¶¶ 18, 20.)  In connection with that sale, the parties entered into a Master Seller's Purchase and Warranties Agreement dated May 12, 2005 (the "MSPA," SAC Ex. A), under which UBS represented and warranted that the Loans would meet certain criteria and satisfy certain characteristics (the "Warranties").  (*See* SAC ¶ 25.)  UBS also agreed to indemnify RFC against any liabilities and losses that RFC might incur if UBS's Warranties were false.  (*See, e.g.*, MSPA § 3.03; SAC ¶ 28.)

After purchasing the Loans, RFC either securitized them by creating so-called "RMBS Trusts," or sold them into whole loan pools.  (SAC ¶¶ 22–24.)  In doing so, RFC made certain representations to the RMBS or whole-loan purchasers concerning the characteristics of the Loans, relying on information provided by UBS and other mortgage originators.  (*Id.* ¶¶ 26, 32.)

RFC alleges that the performance of the Loans revealed that the Loans contained a massive number of defects, in violation of the Warranties that UBS had made to RFC.  (Opp. at 3; SAC ¶¶ 33–42.)  The Loans began to default in large numbers, triggering losses in RMBS Trusts.  (*See* SAC ¶ 43.)  RMBS investors and others filed claims against RFC seeking compensation for these losses.  (*Id.* ¶ 9.)  These claims, relating to the Loans RFC bought from

4

UBS as well as loans purchased from other mortgage originators, alleged staggering liability, involving more than 100 RMBS Trusts and a combined original principal balance of over $100 billion. (*Id.* ¶¶ 62–72.) Among the allegations common to these claims were that the loans backing RFC's RMBS Trusts breached RFC's representations and warranties concerning loan quality and underwriting guidelines—representations and warranties that, by extension, RFC had received from UBS and the other mortgage originators when buying the loans. (*Id.*)

On May 14, 2012, RFC, Residential Capital, LLC, and numerous affiliates (the "Debtors") filed for chapter 11 bankruptcy protection, due in part to their enormous potential exposure from these RMBS-related lawsuits. (*Id.* ¶ 74.) RMBS investors, monoline insurers, whole-loan purchasers, indenture trustees, and others filed hundreds of proofs of claim in these bankruptcy proceedings, many of which mirrored pre-petition litigation, and all of which stemmed from allegedly defective mortgage loans. (*Id.* ¶ 75.) After protracted and contested proceedings, and through a lengthy mediation process, a global settlement was reached that provided for the resolution of all of the Debtors' RMBS-related liabilities—including liability arising from the Loans purchased from UBS—in exchange for over $10 billion in allowed claims, allocated by various means to the RMBS Trusts, monoline insurers, FHFA, securities law claimants, and others (the "Global Settlement"). (*Id.* ¶ 78.)

On December 11, 2013, the Court entered an order (the "Confirmation Order," Ch. 11 ECF Doc. # 6065)[5] confirming the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Plan," Ch. 11 ECF Doc. # 6065-1). The Plan, which is a liquidation plan, became effective on December 17, 2013 (the "Effective Date"). (Ch. 11 ECF Doc. # 6137.) As part of the confirmed

---

[5]    References to documents filed in the chapter 11 proceeding, Case No. 12-12020, will be notated as "Ch. 11 ECF Doc. # XX."

Plan, the Court approved the Global Settlement, finding it to be fair, reasonable, and in the best interests of each of the Debtors. (*See* Findings of Fact ¶¶ 98–176, Ch. 11 ECF Doc. # 6066.)

RFC filed this action on December 17, 2013, after its RMBS-related liabilities became fixed through confirmation of the Plan. RFC asserts that

> [p]ursuant to its express contractual obligations, UBS is obligated to compensate RFC for the portion of [the] Global Settlement associated with UBS's breaches [of] its representations and warranties, as well as for the portion of RFC's other liabilities and losses (including the tens of millions of dollars that RFC has paid in attorneys' fees to defend against, negotiate, and ultimately settle claims relating to allegedly defective loans) associated with those same breaches.

(SAC ¶ 80.)

### B.    UBS's Proof of Claim

On November 9, 2012—before RFC filed this action—UBS timely filed proof of claim number 4200 (the "UBS Claim") in RFC's bankruptcy proceeding. The UBS Claim relates to mortgage loans that UBS bought from RFC that were subsequently included in UBS-sponsored RMBS offerings. (*See* Proof of Claim, Fumerton Decl. Ex. F.) Like RFC, UBS bought mortgage loans—including loans from RFC—to be repackaged and sold. UBS's purchase of loans from RFC was governed by a set of contracts (the "POC Contracts")[6] that contained representations and warranties, as well as indemnification provisions, some of which were identical or similar in form to those in the MSPA governing RFC's purchase of Loans from UBS.[7] In its proof of claim, UBS asserts that it has been named as a defendant in third-party lawsuits related to RMBS offerings and that, under the terms of the POC Contracts, RFC is obligated to indemnify UBS for any claims, causes of action, losses, damages, judgment, costs,

---

[6]    The POC Contracts are: (1) a Standard Terms and Provisions of Sale and Servicing Agreement dated May 30, 2006 (Fumerton Supp. Ex. 4); (2) a Reference Agreement, also dated May 30, 2006 (Fumerton Supp. Ex. 5); and (3) a Sale and Servicing Agreement (Fumerton Supp. Ex. 6).

[7]    For a comparison of similar provisions in the POC Contracts and the MSPA, *see* RFC Supp. at 7–10.

and fees related to or arising from the lawsuits.  (*Id.*)  The proof of claim explicitly states that it is not intended to waive any rights of UBS to contest the jurisdiction of this Court.  On December 12, 2013, the Debtors objected to UBS's proof of claim solely on the ground of "Insufficient Documentation."  (*See Debtors' Fifty-Second Omnibus Objection to Claims (Insufficient Documentation)*, Ch.11 ECF Doc. # 6075.)  The Debtors' objection and the UBS Claim remain pending—a hearing on the objection has been adjourned several times, most recently to a date to be determined.  (*See* Ch. 11 ECF Doc. ## 6210, 6328, 6490, 6641.)

### C.      Procedural History and the Remand Motion

RFC filed this action against UBS in the New York State Supreme Court, New York County, on December 17, 2013.  (*See* Compl., ECF Doc. # 1-2.)  In its state court Complaint, RFC alleged that jurisdiction was proper in New York state court under CPLR sections 301 and 302, and that venue was proper under CPLR sections 501 and 503.  (Compl. ¶¶ 13–14.)

On March 27, 2014, RFC removed this action under 28 U.S.C. § 1452(a) to the District Court for the Southern District of New York, invoking 28 U.S.C. § 1334 as its sole ground for federal jurisdiction and asserting that the action is a "core" bankruptcy proceeding.  (*See* Notice of Removal, ECF Doc. # 1-2 at 3–5; ¶ 13 ("The Removed Case is a core proceeding because it: concerns issues and claims similar and in some respects identical to those Defendant is asserting in its proof of claim in RFC's bankruptcy case; is in substance and effect a counterclaim by the bankruptcy estate; relates to the administration of the estate and the Trust's obligation to liquidate RFC's assets; and may affect the allowance or disallowance of claims against the estate.").)  On April 1, 2014, the action was referred to this Court under 28 U.S.C. § 157(a) and the S.D.N.Y. Amended Standing Order of Reference.  *See* Amended Standing Order of Reference (M-431), Case No. 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012).

In its Second Amended Complaint, RFC alleges that jurisdiction is proper in this Court since this action is a core proceeding under 28 U.S.C. § 157(b)(2)(C) as a counterclaim to UBS's proof of claim, and also under § 157(b)(2)(A), (L), and (O) in that it affects the administration of the Debtors' bankruptcy cases, requires enforcement of the Plan, and impacts the liquidation of the assets of the estate. (SAC ¶ 16). RFC also alleges that this Court has jurisdiction under 28 U.S.C. § 1367 because this matter is part of the same case or controversy as UBS's proof of claim.[8]

UBS's Remand Motion seeks to remand this action to the New York State Supreme Court. UBS argues that (1) this Court has neither core nor "related to" jurisdiction over this proceeding, and (2) even if the Court does have jurisdiction, the Court should abstain from hearing the case. UBS also does not consent to the entry of final orders or judgment by this Court if it is determined that a bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the Constitution.

## II.    DISCUSSION

### A.    This Court Has Subject Matter Jurisdiction Over This Action Under 28 U.S.C. § 1334(b); It Is As a Core Proceeding Under 28 U.S.C. § 157(b)(2)(C)

The party seeking removal of an action from state to federal court bears the burden of proving federal jurisdiction. *Kirschner v. Grant Thornton LLP (In re Refco, Inc. Sec. Litig.)*, 628 F. Supp. 2d 432, 437 (S.D.N.Y. 2008). RFC asserts that federal jurisdiction exists over this action under 28 U.S.C. § 1334, which provides federal district courts with jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C.

---

[8]    There is authority, including in the Second Circuit, that bankruptcy courts may exercise supplemental jurisdiction under 28 U.S.C. § 1367. *See, e.g.*, *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195 (9th Cir. 2005); *Lionel Corp. v. Civale & Trovato, Inc. (In re Lionel Corp.)*, 29 F.3d 88, 92 (2d Cir.1994); *Shafferman v. The Queens Borough Public Library (In re JMK Construction Group, Ltd.)*, 502 B.R. 396, 403 n.6 (Bankr. S.D.N.Y. 2013). Jurisdiction over the third-party claims, however, does not necessarily mean that the bankruptcy court may enter final orders or judgment with respect to the claims.

§ 1334(b).  Title 28 further provides that district courts may refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising or related to a case under title 11 . . . to the bankruptcy judges for the district."  28 U.S.C. § 157(a).  Under the statute, matters that may be referred to the bankruptcy courts are divided into two categories:  "core" and "non-core" proceedings.  *See generally* 28 U.S.C. § 157; *see also Arkison*, 134 S. Ct. at 2171.

RFC asserts that this Court has jurisdiction over this action as a "core" proceeding since it is a counterclaim against UBS's proof of claim.  *See* 28 U.S.C. § 157(b)(2)(C) (stating that core proceedings include "counterclaims by the estate against persons filing claims against the estate").  UBS disagrees, arguing that counterclaims must relate to a proof of claim to be considered "core."  The Court rejects UBS's argument; the connection between a counterclaim and a proof claim is irrelevant for establishing federal subject matter jurisdiction over the counterclaim.  The relationship between the claim and counterclaim—and specifically, whether both will necessarily be resolved as part of the claims allowance process—is determinative only of whether a bankruptcy court may finally adjudicate the counterclaim in question.  *See Stern v. Marshall*, 131 S. Ct. 2594, 2620 (2011).  Thus, this proceeding is statutorily core as a "counterclaim[] by the estate against persons filing claims against the estate."[9]  28 U.S.C. § 157(b)(2)(C).  It follows, therefore, that the Court has jurisdiction over the proceeding under 28 U.S.C. § 1334(b) as one "arising in" a title 11 case.  *See Stern*, 131 S. Ct. at 2604 (holding that all core proceedings necessarily arise under title 11 or arise in a title 11 case).  Further, any proceeding that arises under the Bankruptcy Code or arises in a bankruptcy case is necessarily

---

[9]      Section 157(b)(2) includes a non-exclusive list of core proceedings.  While there may be room to disagree whether some matters fall within certain subsections of section 157(b)(2), counterclaims by the estate against persons filing claims against the estate, as UBS did here, leaves no ambiguity.

"bankruptcy-related," as that term was used in *Arkison*.[10] *Arkison*, 134 S. Ct. at 2168. The

Court's reasoning is best explained with a brief history of the current statute and relevant case

law.

Courts have grappled with constitutional and statutory limits on bankruptcy jurisdiction

since before the current bankruptcy court system was created in the Bankruptcy Act of 1978 (the

"1978 Act"). The inquiry commonly focused on whether a bankruptcy estate's affirmative claim

against a third party involved the claims allowance process. For example, in *Katchen v. Landy*,

382 U.S. 323 (1966), the Supreme Court held that a bankruptcy judge had authority to enter

judgment on a bankruptcy estate's preference action against a creditor that filed a proof of claim

in the bankruptcy case, *and* to enter judgment against the creditor for an amount in excess of its

proof of claim. The Court held that the preference action in question was, like any other claims

objection, "part and parcel" of the claims allowance process, and therefore subject to

adjudication by a bankruptcy court. *Id.* at 330. The Court explained: "he who invokes the aid of

the bankruptcy court by offering a proof of claim and demanding its allowance must abide the

consequences of that procedure." *Id.* at 333 n.9. "[O]ne of those consequences was resolution of

the preference issue as part of the process of allowing or disallowing claims . . . ." *Stern*, 131 S.

Ct. at 2616 (explaining *Katchen*).

The contours of bankruptcy jurisdiction remained unclear after enactment of the 1978

Act. In a landmark decision, the Supreme Court struck down as unconstitutional the provisions

of the 1978 Act that granted bankruptcy courts final adjudicative authority over certain state law

---

[10]     This truism was not important until the Supreme Court's decisions in *Stern* and, in particular, *Arkison*,
which, as discussed below, explains what a bankruptcy court may do in adjudicating *Stern* claims. Because the
claims are bankruptcy-related, the Court may submit proposed findings of fact and conclusions of law to the district
court under section 157(c)(1), even if the Court lacks constitutional authority to enter final judgment on the claims
under section 157(b)(1). *See Arkison*, 134 S. Ct. at 2172–73; *see also U.S. Bank Nat. Ass'n v. Verizon Commc'ns,
Inc.*, No. 13-10752, 2014 WL 3746476, at *12 (5th Cir. July 30, 2014).

claims brought against third parties who were not otherwise part of the bankruptcy proceeding.

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).  The Court

explained that Article III of the Constitution required those matters to be adjudicated by an

Article III court, not an Article I bankruptcy court.  *Id.* at 71–72; *see also In re New York Skyline,*

*Inc.*, 512 B.R. 159, 171 (Bankr. S.D.N.Y. 2014) (discussing *Marathon*).  Notably, the defendant

in *Marathon* had not filed a proof of claim in the bankruptcy case—an important distinction from

*Katchen*.  *See Stern*, 131 S. Ct. at 2615–18 (discussing *Katchen* and *Marathon*).

To address the constitutional issues raised in *Marathon*, Congress enacted the Bankruptcy

Amendments and Federal Judgeship Act of 1984 (the "1984 Act").  *See Pied Piper Casuals, Inc.*

*v. Ins. Co. of State of Pa.*, 72 B.R. 156, 158 (S.D.N.Y. 1987).  The 1984 Act divided matters that

may be referred to the bankruptcy courts into two categories:  "core" and "non-core"

proceedings.  *See generally* 28 U.S.C. § 157; *see also Arkison*, 134 S. Ct. at 2171.  "[C]ore

proceedings are those that arise in a bankruptcy case or under Title 11."[11]  *Stern*, 131 S. Ct. at

2605.  Congress provided a non-exhaustive list of core proceedings in section 157(b)(2) of the

1984 Act.  Non-core proceedings are those that are not core "but that [are] otherwise related to a

case under title 11."  28 U.S.C. § 157(c)(1).  Bankruptcy judges were given statutory authority to

enter final judgments in core proceedings, *id.* § 157(b)(1), but were limited in non-core

proceedings to submitting proposed findings of fact and conclusions of law to the district court

for *de novo* review.  *Id.* § 157(c)(1).

---

[11]    Courts have articulated that "[c]laims 'arise in' bankruptcy when, although not based on any right expressly
created by Title 11, they 'would have no practical existence but for the bankruptcy.'"  *Lothian Cassidy, LLC v.*
*Lothian Exploration & Dev. II, L.P.*, 487 B.R. 158, 162 (S.D.N.Y. 2013) (quoting *In re Casual Male Corp.*, 317
B.R. 472, 476 (Bankr. S.D.N.Y. 2004).  Still, "[c]ommon-law claims closely connected with the administration of
the bankruptcy can qualify as 'arising in' a bankruptcy even though they may, in a literal sense, be brought outside a
bankruptcy action."  *Id.*  A counterclaim to a bankruptcy proof of claim would have no practical existence but for
the bankruptcy.

Proceedings involving the "allowance or disallowance of claims" are listed as core

proceedings under 28 U.S.C. § 157(b)(2)(B).  Even after *Marathon*, it remained clear—as it had

been since *Katchen*—that bankruptcy courts could constitutionally determine matters that were

part of the claims allowance process.  *See, e.g.*, *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990)

("[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance

and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable

power.") (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58–59 (1989)).  This authority is

codified in 28 U.S.C. § 157(b)(2)(B).  But it was unclear whether Congress, by listing

counterclaims as core in section 157(b)(2)(C), had provided that the filing of a proof of claim

subjected a creditor to final adjudication by the bankruptcy court of *all* counterclaims by the

estate (regardless of connection to the proof of claim), and, if so, whether that act was

constitutional.  *See* 1 COLLIER ON BANKRUPTCY ¶ 3.02[d][i] (16th ed. rev. 2014).

The Supreme Court addressed this issue in *Stern v. Marshall*.  In *Stern*, a creditor filed a

proof of claim for defamation in the debtor's bankruptcy case, and the debtor defended the

complaint and filed a counterclaim for tortious interference.  *See Stern*, 131 S. Ct. at 2601.  The

bankruptcy court treated the counterclaim as core, and entered judgment in favor of the debtor.

*See id.* at 2601–02.  The district court disagreed that the counterclaim was core, and conducted a

*de novo* review of the record as if the claim was non-core.  *See id.* at 2602.  On further appeal,

the Ninth Circuit held that the debtor's counterclaim, although compulsory, was not a core

proceeding under section 157(b)(2)(C).  *Marshall v. Stern (In re Marshall)*, 600 F.3d 1037,

1057–58 (9th Cir. 2010).  Specifically, the court stated that

> a counterclaim under § 157(b)(2)(C) is properly a core proceeding arising in a
> case under the Code only if the counterclaim is so closely related to the proof of
> claim that the resolution of the counterclaim is necessary to resolve the allowance
> or disallowance of the claim itself.  Such a construction of § 157(b)(2)(C) takes

> into account the whole of the statute, avoids rendering any terms superfluous, follows *Katchen,* and comports with the principles of *Marathon* and Congress' desire to revise the Bankruptcy Code in a manner consistent with the Constitution.

*Id.* at 1058 (internal quotation marks omitted).

On appeal to the Supreme Court, one of the questions presented was "[w]hether the Ninth Circuit opinion, which render[ed] § 157(b)(2)(C) surplusage in light of § 157(b)(2)(B), contravene[d] Congress' intent in enacting § 157(b)(2)(C)." Petition for Writ of Certiorari at ii, *Stern,* 131 S. Ct. 2594 (No. 05-1631), 2010 WL 3068082. The Supreme Court answered this question in the affirmative, rejecting the Ninth Circuit's reasoning. The Court held that the counterclaim at issue was indeed statutorily core under section 157(b)(2)(C) as a "counterclaim by the estate against persons filing claims against the estate." *Stern,* 131 S. Ct. at 2604. *See also* 1 COLLIER ON BANKRUPTCY ¶ 3.02[d][i]. But even though the counterclaim was statutorily core, the Court concluded that Congress could not constitutionally authorize bankruptcy courts to finally determine the counterclaim, since the bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Stern,* 131 S. Ct. at 2620. Thus, "*Stern* made clear that some claims labeled by Congress as 'core' may not be adjudicated by a bankruptcy court in the manner designated by § 157(b)." *Arkison,* 134 S. Ct. at 2172. It is important to note, though, that *Stern* explicitly held that the debtor's counterclaim was "core" under section 157(b)(2)(C). *See Stern,* 131 S. Ct. at 2605 ("[W]e agree with [the creditor] that designating all counterclaims as 'core' proceedings raises serious constitutional concerns. . . . We would have to 'rewrit[e]' the statute, not interpret it, to bypass the constitutional issue § 157(b)(2)(C) presents. That we may not do.") (alteration in original) (quoting *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 841(1986)). Nor did *Stern* alter the subject matter jurisdiction of the bankruptcy

courts. *See, e.g.*, *Geron v. Peebler (In re Pali Holdings, Inc.)*, 488 B.R. 841, 848 n.26 (Bankr.

S.D.N.Y. 2013) ("*Stern*, which affects the constitutional power of a bankruptcy judge to issue a

final judgment in a matter as to which the bankruptcy court already has subject matter

jurisdiction, does not in any way deprive bankruptcy courts of subject matter jurisdiction."). As

the Supreme Court stated, "[s]ection 157 allocates the authority to enter final judgment between

the bankruptcy court and the district court. That allocation does not implicate questions of

subject matter jurisdiction." *Stern*, 131 S. Ct. at 2607.

Against this backdrop, the Court turns to the issue presented in the Remand Motion—

whether federal subject matter jurisdiction exists over the state law claims asserted in this action.

As discussed above, the core/non-core distinction generally does not bear on the question of

federal subject matter jurisdiction—federal courts have jurisdiction to hear *both* core matters *and*

non-core matters. *See* 28 U.S.C. § 1334(b). But if the current proceeding qualifies as one of the

core proceedings enumerated in section 157(b)(2), then it follows that the Court has subject

matter jurisdiction over the action as one "arising in" a bankruptcy case, and the Court need not

determine whether the claims are "related to" the bankruptcy proceeding.[12] Further, the

---

[12]     In a different RMBS Action, Judge Abrams referred the action to this Court, finding that the action was "related to" RFC's bankruptcy case. *See* Memorandum Opinion and Order, *Residential Funding Co., LLC v. SunTrust Mortg., Inc.*, No. 13-cv-8938 (S.D.N.Y. July 3, 2014) ("J. Abrams Order"). The defendant, SunTrust, did not file a proof of claim. Generally, before a plan is confirmed, "a civil proceeding is related to a title 11 case if the action's outcome might have any conceivable effect on the bankrupt estate." *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) (internal quotation marks omitted) (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir.1992)). Once a plan of reorganization is confirmed, however, it is unclear whether the "conceivable effect" test continues to apply. The answer may depend on whether the plan provides for the debtor to be reorganized or liquidated. Where the debtor has been reorganized, the "close nexus" test applies. *See ACE Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 448 F. App'x 134, 137 (2d Cir. 2011). That test has two requirements: "First the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan and second, the plan must provide for the retention of jurisdiction over the dispute." *Savoy Senior Hous. Corp. v. TRBC Ministries, LLC*, 401 B.R. 589, 597 (S.D.N.Y. 2009) (quoting *Krys v. Sugrue*, No. 08 Civ. 7416 (GEL), 2008 WL 4700920, at *5–6 (S.D.N.Y. Oct. 23, 2008)). The "close nexus" test applies post-confirmation in reorganization cases because "it is assumed the reorganized debtor is becoming self-sufficient, and no longer needs umbrella protection from the bankruptcy court. Additionally, there is no estate, as property reverts to the reorganized debtor." *In re Park Ave. Radiologists, P.C.*, 450 B.R. 461, 468 (Bankr. S.D.N.Y. 2011).

core/noncore distinction becomes significant on a motion to remand, since mandatory abstention principles do not apply to core claims.[13] *See* 28 U.S.C. § 1334(c).

RFC asserts that this action is core as a "counterclaim[] by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(C). Specifically, RFC contends that the claims it asserts against UBS in this action are the "mirror image" of the claims asserted against it in the UBS proof of claim. (Opp. at 8.) Even though the claims in this action and the UBS Claim are based on wholly distinct contracts, involving entirely different sets of loans, the Court agrees with RFC that the claims are counterclaims under Rule 13 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7013. *See* FED. R. CIV. P. 13(c) ("A counterclaim need not diminish or defeat the recovery sought by

---

Some courts apply the "close nexus" test even when the debtor liquidates; other courts apply the "conceivable effect" test. *See Allstate Ins. Co. v. CitiMortgage, Inc.*, No. 11 Civ. 1927 (RJS), 2012 WL 967582, at *5 (S.D.N.Y. Mar. 13, 2012) (summarizing the division within the circuit). This Court previously applied the conceivable effect test in a liquidation case. *See In re Cross Media Mktg. Corp.*, 367 B.R. 435, 444 (Bankr. S.D.N.Y. 2007) (holding that a bankruptcy court's jurisdiction does not diminish post confirmation if the debtor, pursuant to a liquidating plan, seeks to commence litigation to collect the debtor's assets for the benefit of its creditors). The Court adopted the reasoning of the First Circuit that a bankruptcy court's jurisdiction should not shrink post-confirmation in a liquidation proceeding because "a liquidating debtor exists for the singular purpose of executing an order of the bankruptcy court. Any litigation involving such a debtor thus relates much more directly to a proceeding under title 11." *In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 107 (1st Cir. 2005).

Judge Abrams did not decide the applicable standard because she found that the action satisfied the "close nexus" test. *See* J. Abrams Order at 4 ("The Court need not decide which standard applies, however, because the present action meets even the more onerous 'close nexus' standard." (citing *Refco*, 628 F. Supp. 2d at 441–43)). Specifically, Judge Abrams found that "[t]he claims RFC has asserted against SunTrust . . . directly affect the 'implementation, consummation, execution or administration' of the Plan, as the Plan expressly preserves such claims, transfers them from RFC to the Liquidating Trust, and provides for RFC's creditors to receive a share of recovery from them." *Id.* at 4–5 (citations omitted).

Since the Court finds it has core jurisdiction over this action as a counterclaim to the UBS Claim, the Court need not reach the question here. This issue may need to be addressed in the other similar RMBS Actions filed by RFC or the Trust where the defendant did not file a proof of claim against the Debtors. The Court will first have to determine whether the RMBS Actions are core (other than under section 157(b)(2)(C)), and, if not, whether the claims are "related to" the bankruptcy under the applicable test—either the conceivable effect or close nexus test.

[13]     Additionally, "forum selection clauses," such as those contained in some of the RMBS Actions, *see supra* n.3, are generally enforced in non-core cases but not in core cases. *See Wachovia Bank N.A. v. Encap Golf Holdings, LLC*, 690 F. Supp. 2d 311, 329–31 (S.D.N.Y. 2010) (Crotty, J.); *Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC)*, 285 B.R. 822, 835–37 (S.D.N.Y. 2002) (Pauley, J.).

the opposing party.  It may request relief that exceeds in amount or differs in kind from the relief sought by the opposing party.").

UBS argues that the counterclaims asserted in this action are non-core, since they involve distinct issues and facts from its proof of claim and therefore do not qualify as counterclaims under section 157(b)(2)(C).  (*See* Mem. at 11–12; Reply at 3–4.)  UBS's argument relies indirectly on a number of pre-*Stern* decisions by courts in this district that held that section 157(b)(2)(C) confers core bankruptcy jurisdiction over a state law counterclaim only when there is some connection between the counterclaim and the creditor's proof of claim.  *See, e.g.*, *Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC)*, 285 B.R. 822, 832 (S.D.N.Y. 2002) ("Traditionally non-core claims against a creditor in an adversary proceeding will be considered core if:  (1) the claim arises out of the same transaction as the creditor's proofs of claim or setoff claim, or (2) the adjudication of the adversary proceeding claim would require consideration of issues raised by the proofs of claim or setoff claim such that the two claims are logically connected."); *In re Lombard-Wall Inc.*, 48 B.R. 986, 990–91 (S.D.N.Y. 1985) ("Although [section 157(b)(2)(C)] would appear to extend the bankruptcy court's jurisdiction to all counterclaims, courts have traditionally permitted bankruptcy courts to assert jurisdiction over counterclaims by a trustee only when there exists some connection between the claims of the creditor and those of the trustee.").[14]

---

[14]     *See also Leslie Fay Cos. v. Falbaum (In re Leslie Fay Cos.)*, No. 97 Civ. 2244 (MGC), 1997 WL 555607, at *2 (S.D.N.Y. Sept. 4, 1997) (holding that adversary proceeding was core counterclaim where it arose out of the same transaction as the proofs of claim and concerned same agreements); *Hirsch v. London S.S. Owners' Mut. Life Ins. Ass'n Ltd. (In re Seatrain Lines, Inc.)*, 198 B.R. 45, 50 n.7 (S.D.N.Y. 1996) ("A debtor's adversary proceeding against a creditor is a core matter only when it arises out of the same transaction as the proof of claim—functioning, in essence, as a counterclaim to it.").  In support of its argument, UBS cites to *Durso Supermarkets, Inc. v. D'Urso (In re Durso Supermarkets, Inc.)*, 170 B.R. 211, 213–14 (S.D.N.Y. 1994), which held that a counterclaim was not "core" because it did not arise out of the same transaction as the creditor's proof of claim, which was based on a state court judgment.

UBS's reliance on this line of reasoning is misplaced in light of the Supreme Court's ruling in *Stern*.  As the above discussion makes clear, before *Stern*, courts attempted to reconcile a bankruptcy court's core jurisdiction with the Supreme Court's earlier rulings that appeared to require a connection between a bankruptcy estate's affirmative claim against a creditor and that creditor's proof of claim.  But engaging in this analysis conflated matters involving the "allowance or disallowance of claims," which are core proceedings under section 157(b)(2)(B), with counterclaims against creditors of the estate, which are core proceedings under section 157(b)(2)(C).  *Stern* made clear that a determination whether a counterclaim is "core" under section 157(b)(2)(C) does not turn on whether that claim is related to the proof of claim; that inquiry is relevant only to a determination whether the bankruptcy court may constitutionally finally adjudicate the issue under section 157(b)(1).  *See Stern*, 131 S. Ct. at 2605.  Thus, the counterclaims asserted in this action are statutorily core as counterclaims under section 157(b)(2)(C), and the Court has "arising in" subject matter jurisdiction over the claims.[15] Whether this Court has constitutional authority to enter final judgment on the counterclaims is a separate issue, and one that is not currently before the Court.

The Court also rejects UBS's argument that the Supreme Court's recent decision in *Arkison* transforms counterclaims like the one asserted here into non-core claims.  (*See* Reply at 4–5.)  As explained above, "*Stern* made clear that some claims labeled by Congress as 'core' may not be adjudicated by a bankruptcy court in the manner designated by § 157(b).  *Stern* did

---

[15]     Conferring core jurisdiction over the counterclaims asserted here also comports with the policy of efficiency behind permissive counterclaims under the federal rules.  *See* 6 Charles A. Wright, *et al.*, FEDERAL PRACTICE AND PROCEDURE § 1420 (3d ed. 2014) ("Rule 13(b) simply encourages the parties to assert their independent and unrelated counterclaims in order to dispose of all points of controversy between the litigants in one action, thereby avoiding the cost of multiple suits.").  This holding also promotes "the strong public policy interest in centralizing all core matters in the bankruptcy court."  *Breeden v. The Aegis Consumer Funding Grp. Inc. (In re The Bennett Funding Grp., Inc.)*, 259 B.R. 243, 252 (N.D.N.Y. 2001); *see also Kismet Acquisition, LLC v. Icenhower (In re Icenhower)*, No. 10-55933, 2014 WL 2978491, at *5 (9th Cir. July 3, 2014) ("One of the Bankruptcy Code's primary objectives is centralization of disputes concerning a debtor's legal obligations." (internal quotation marks omitted)).

not, however, address how the bankruptcy court should proceed under those circumstances."

*Arkison*, 134 S. Ct. at 2168.  Thus, after *Stern*, courts were divided on how to proceed when

faced with a "*Stern* claim"—i.e., "a claim designated for final adjudication in the bankruptcy

court as a statutory matter, but prohibited from proceeding in that way as a constitutional

matter."  *Id.* at 2170.  Bankruptcy judges lack constitutional authority to finally adjudicate *Stern*

claims, but section 157(c)(1)—allowing for the submission of proposed findings of fact and

conclusions of law—applies on its face only to non-core claims.  *See* 28 U.S.C. § 157(c)(1).  The

Supreme Court addressed this apparent "statutory gap" in *Arkison*, holding that "[t]he statute

permits *Stern* claims to proceed as non-core within the meaning of § 157(c)."  *Arkison*, 134 S. Ct.

at 2172–73.  The Court explained:

> When a court identifies a claim as a *Stern* claim, it has necessarily "held invalid"
> the "application" of § 157(b)—*i.e.*, the "core" label and its attendant procedures—
> to the litigant's claim.  Note following [28 U.S.C.] § 151. . . .  With the "core"
> category no longer available for the *Stern* claim at issue, we look to § 157(c)(1) to
> determine whether the claim may be adjudicated as a non-core claim—
> specifically, whether it is "not a core proceeding" but is "otherwise related to a
> case under title 11."  If the claim satisfies the criteria of § 157(c)(1), the
> bankruptcy court simply treats the claims as non-core:  The bankruptcy court
> should hear the proceeding and submit proposed findings of fact and conclusions
> of law to the district court for *de novo* review and entry of judgment.

*Id.*

UBS argues that the above language from *Arkison* renders this action non-core.  The

Court disagrees.  Writing for a unanimous court in *Arkison*, Justice Thomas did not specify

which subsection of section 157(b) would be invalidly applied to a *Stern* claim.  Under this

Court's reading of *Stern* and *Arkison*, a bankruptcy court is foreclosed from applying the

procedures delineated in section 157(b)(1)—i.e., final adjudication of core claims—to certain

claims labeled as core by Congress in section 157(b)(2).  Instead, adjudication of *Stern* claims is

channeled to section 157(c), permitting the bankruptcy court to submit proposed findings of fact

and conclusions of law, *as if* the claim was non-core.[16]  The Court does not read *Arkison* to re-write the statute such that *Stern* claims are no longer statutorily core under 157(b)(2)—something the *Stern* court itself explicitly did not do.  *See Stern*, 131 S. Ct. at 2605.

For these reasons, the Court holds that this action is core as a counterclaim against the UBS proof of claim, and the Court therefore has core jurisdiction over the action as a matter "arising in" the bankruptcy proceeding.  Accordingly, the Court need not address any of RFC's alternative bases for establishing core jurisdiction.  Further, because the action is core, mandatory abstention principles do not apply.  *See* 28 U.S.C. 1334(c); *see also Shipley Garcia Enters., LLC v. Cureton*, No. 12-cv-0089, 2012 WL 3249544, at *10 (S.D. Tex. Aug. 7, 2012) (holding that mandatory abstention does not apply to *Stern* claims because "although *Stern* determined that a bankruptcy court may not constitutionally enter final judgment on certain counterclaims under § 157(b)(2)(C), it did not rewrite the statute and reclassify those claims as 'related to' proceedings under §§ 157(c)(1) or 1334(c).").  Therefore, the only remaining issue is whether the Court should abstain under permissive abstention principles.  The Court concludes that it should not.

### B.  Abstention is Not Warranted Under Permissive Abstention Principles

UBS argues that even if the Court concludes that it has core jurisdiction over this proceeding (which it does), the Court should nonetheless remand the action by exercising its discretion to abstain from hearing the case.  *See* 28 U.S.C. § 1334(c)(1) ("[N]othing in this

---

[16]     The result in *Arkison* supports the approach adopted by the U.S. District Court for the Southern District of New York in Amended Standing Order of Reference, M-431 (dated Jan. 31, 2012) ("If a bankruptcy judge or district judge determines that entry of a final order or judgment by a bankruptcy judge would not be consistent with Article III of the United States Constitution in a particular proceeding referred under this order and determined to be a core matter, the bankruptcy judge shall, unless otherwise ordered by the district court, hear the proceeding and submit proposed findings of fact and conclusions of law to the district court.  The district court may treat any order of the bankruptcy court as proposed findings of fact and conclusions of law in the event the district court concludes that the bankruptcy judge could not have entered a final order or judgment consistent with Article III of the United States Constitution.").

section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."). The Court disagrees. Courts in this district consider a number of factors when determining whether to permissively abstain from a case pursuant to section 1334(c)(1), including:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden [on] the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 332 (S.D.N.Y. 2003) (quoting *In re Masterwear Corp.*, 241 B.R. 511, 520 (Bankr. S.D.N.Y. 1999)). *See also Bayerische Landesbank v. Deutsche Bank AG (In re Residential Capital, LLC)*, 488 B.R. 565, 577 (Bankr. S.D.N.Y. 2013).

Section 1334(c)(1) must be interpreted according to the principle that "federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them,' and may abstain only for a few 'extraordinary and narrow exception[s].'" *Id.* (alterations in original) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 813)); *see also Lothian*, 487 B.R. at 165 (noting the "presumption against abstention"); *Refco*, 628 F. Supp. 2d at 447 (stating that "[f]ederal courts . . . must be sparing in their exercise of discretionary abstention" (internal quotation marks omitted)). The movant bears the burden of establishing that permissive abstention is warranted. *Residential Capital*, 488 B.R. 577 (citing *In re*

*Margulies*, 476 B.R. 393, 402 (Bankr. S.D.N.Y. 2012)).  The Court finds that the relevant factors

for permissive abstention weigh against abstaining from exercising the Court's jurisdiction over

this proceeding.

     *First*, the court rejects UBS's argument that "this action will have—at best—a contingent

and remote effect on the [b]ankruptcy [p]roceedings."  (Mem. at 18.)  As UBS acknowledges,

any recovery in this action will go to RFC's creditors under the terms of the confirmed Plan.

(*See id.*)  Thus, the bankruptcy estate will benefit from any judgment RFC obtains, and the cases

cited by UBS are therefore distinguishable.  For example, in *Allstate Insurance Co. v.

CitiMortgage, Inc.*, the court applied permissive abstention in a proceeding between two non-

debtors, where the defendant had filed an indemnification claim against the debtor.  No. 11 Civ.

1927 (RJS), 2012 WL 967582, at *5–6 (S.D.N.Y. Mar. 13, 2012).  The court found that the

action between the two non-debtors would have no impact on the efficient administration of the

bankruptcy proceeding, especially because the defendant's indemnification claim against the

debtor had already been fully liquidated.  *Id.*; *see also Residential Capital*, 488 B.R. at 577

(recommending that the district court abstain from hearing a case between two non-debtors

where the defendant had filed an indemnification claim against the bankruptcy estate).  Here, any

judgment in favor of RFC in this action will result in an affirmative recovery for the RFC

bankruptcy estate, which is being administered by the Trust.  The potential benefit to RFC's

creditors alone is sufficient to find an effect on the efficient administration of the estate.  *See,

e.g.*, *Refco*, 628 F. Supp. 2d at 446 (holding that discretionary abstention was not warranted

where the action "share[d] a close relationship with the . . . bankruptcy proceeding as the claims

being prosecuted by the Trustee [were] the very causes of action that were assigned to it by

the . . . Debtors pursuant to the confirmed Plan).  Additionally, this particular RMBS Action was

brought against a defendant with its own proof of claim in the bankruptcy proceedings (related to different loans than those at issue here). Since UBS's recovery on its proof of claim may be offset by RFC's recovery in this case (or vice versa), this case affects the bankruptcy estate in that regard as well. Therefore, the Court finds that this case will have an effect on the administration of the bankruptcy proceedings, which "is one of the more important factors to consider" for permissive abstention. *Allstate*, 2012 WL 967582, at *6 (citing *In re Adelphia Commc'ns Corp.*, 285 B.R. 127, 144–45 (Bankr. S.D.N.Y. 2002)).

*Second*, although this action involves only state law claims, none of the issues are particularly complex, so comity does not require abstention. *See Refco*, 628 F. Supp. 2d at 446 (holding that "the state law claims are straightforward common-law claims that do not involve arcane or idiosyncratic provisions of state law that would warrant abstention based on comity concerns" (internal quotation marks omitted)); *WorldCom*, 293 B.R. at 332 ("NYCERS has not identified any unique or unsettled issues of state law that warrant abstention based on comity concerns."). The Court dealt extensively with similar claims asserted against RFC during the bankruptcy case; the claims were settled in the Global Settlement incorporated into the confirmed Plan. UBS argues that the law regarding the statute of limitations to apply in this case was recently thrown into doubt by *ACE Securities Corp. v. DB Structured Products, Inc.*, 977 N.Y.S.2d 229 (App. Div. 2013), over which the New York Court of Appeals recently granted leave to appeal. *See* No. APL–2014–156, 2014 WL 2891678, 2014 N.Y. Slip Op. 76202 (June 26, 2014). Regardless of UBS's contentions, this Court, like other federal courts in this district, is prepared to address the implications of *ACE* if those issues are raised by UBS in a dispositive motion. *See, e.g.*, *Deutsche Bank Nat. Trust Co. v. Quicken Loans Inc.*, No. 13 Civ. 6482 (PAC), 2014 WL 3819356, at *3–4 (discussing district court treatment of *ACE* and finding "no

22

persuasive evidence that the New York Court of Appeals would abrogate the rule stated in [*ACE*]

and the well-reasoned cases following it in this District").  In any event, the issue may be

resolved by the New York Court of Appeals before this Court will have to address it.

*Third*, the Court rejects UBS's argument that it "will suffer prejudice absent remand by

being subjected to unnecessary delay and duplicative proceedings."  (Mem. at 19.)  The Court

will not opine whether this action can be timely adjudicated by a New York state court.  Suffice

it to say that this Court is ready now to proceed with this action in an expeditious manner,

coordinated with the other RMBS Actions pending before the Court.  The Court has already

entered two case management and scheduling orders in these cases.

The Court need not address the other factors for permissive abstention, other than to say

that it has considered all of UBS's arguments and concludes that UBS has failed to carry its

burden to persuade this Court that abstention is warranted.  Therefore, the Court will not abstain

from hearing this case under permissive abstention principles.

### C.    The Court Has Authority to Enter This Order, Which Is Not a Final Order

There is a split in authority whether a motion to remand is itself a "core" proceeding, or

whether the "proceeding" referenced in 28 U.S.C. § 157 is the underlying lawsuit subject to a

remand motion.  *See Residential Capital*, 488 B.R. at 571–72 (discussing split in authority).  In

two prior cases, without resolving the issue, this Court submitted proposed findings of fact and

conclusions of law to the district court, recommending remand of a state court action.  *See id.*;

*Sealink Funding Ltd. v. Deutsche Bank AG (In re Residential Capital, LLC)*, 489 B.R. 26, 43–44

(Bankr. S.D.N.Y. 2013).  In those cases, where motions to withdraw the reference were pending,

this Court's decision to grant the remand motions would have removed the cases from federal

court on a final basis, rendering the withdrawal of the reference motions moot.  *See Residential*

*Capital*, 488 B.R. at 572; *Residential Capital*, 489 B.R. at 43–44.  This Order *denying* the

Remand Motion, however, is an interlocutory order, and not a final judgment, since the case will continue in front of this Court. *See, e.g.*, *O'Toole v. McTaggart (In re Trinsum Grp., Inc.)*, 467 B.R. 735, 740 (Bankr. S.D.N.Y. 2012) ("In adversary proceedings, orders dismissing fewer than all claims are considered to be interlocutory."); *see also LTV Steel Co., Inc. v. United Mine Workers of Am. (In re Chateaugay Corp.)*, 922 F.2d 86, 90 (2d Cir. 1990) ("Orders in bankruptcy cases may be immediately appealed if they resolve discrete disputes within the larger case. The disposition of a discrete dispute is generally considered to be the resolution of an adversary proceeding within the bankruptcy action." (internal citations omitted)). Therefore, the Court has authority to enter this Order, and is not limited to submitting proposed findings of fact and conclusions of law to the district court. *See Trinsum Grp.*, 467 B.R. at 740 (holding that, after *Stern*, bankruptcy judges have the authority to enter interlocutory orders in non-core proceedings and in core proceedings as to which the bankruptcy court may not enter final orders or judgment consistent with Article III absent consent). This Order is still subject to discretionary review by the district court under 28 U.S.C. § 158(a)(3). *See id.* at 741.

### III.    CONCLUSION

For all of the foregoing reasons, the Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated:  August 25, 2014
          New York, New York                                    *Martin Glenn*
                                                    MARTIN GLENN
                                            United States Bankruptcy Judge